The next case this morning is Daley v. Choate, 24-1191. Counsel for appellant, if you'd make your appearance and proceed, please. Good morning, your honors. May it please the court. I am Kyle Brenton on behalf of the respondents. This court can only affirm the district court if it concludes that the phrase civil action in the Equal Access to Justice Act unmistakably and unambiguously encompasses habeas petitions challenging immigration detention. If there is any ambiguity, the court must apply the sovereign immunity clear statement rule and hold with the Fourth and Fifth Circuits that sovereign immunity has not been waived. Now, the analysis here proceeds in three steps. Step one, the term civil action in the aegis is ambiguous as to immigration habeas petitions. Step two, the traditional tools of statutory interpretation that Daley relies on to try to resolve that ambiguity, in fact, do not resolve the ambiguity conclusively. And because step three, civil action can plausibly be read to exclude all habeas, including habeas challenging immigration, the court should apply the clear statement rule here to hold that sovereign immunity bars an award of fees. So, turning to the first step of that analysis. The term civil action is ambiguous. How do we know? Well, first, Congress chose not to define the term civil action. Now, obviously, not every undefined statutory term is automatically ambiguous. But where a broad statutory term like civil action meets a very specific and unique context like habeas, ambiguity can arise, and it does so here. And looking at the dictionaries, both contemporary and current, they almost universally, do they not, draw a distinction between civil means, not criminal? That is a very common way of defining the term, Your Honor. It certainly is. And habeas proceedings are not criminal, right? I think that the Supreme Court cases, the literature supports our position here that habeas cases are unique. They are not criminal. They're not an extension of the criminal prosecution. But I think that when those types of lines are drawn in the law, it is crucially important to look to the context of how and when that line is being drawn and why. I'll point the Court to its cases interpreting the PLRA and about whether the use of the term civil action in that statute encompassed habeas. That's McIntosh, which we cited in our briefs, also Simmons, the case that preceded McIntosh. And this is, the analysis that I'm proposing here is exactly the analysis that the Court engaged in in those cases. The term is undefined and habeas is a unique creature in American law. And therefore, it is ambiguous whether habeas is encompassed within the term civil action. Now, looking to the Supreme Court case law, obviously the Court frequently describes habeas in a general way as civil or as a civil proceeding. It's pretty rare for the Court to use the phrase civil action when describing habeas. And in fact, the parties here have cited only one case where the Supreme Court was interpreting a statutory phrase civil action to determine whether habeas was that. And that was the Schlanger case in which the Court was interpreting civil action in the Mandamus and Venue Act, Section 1391E, and said that habeas was not a civil action for the purposes of that. That was drawing on the decision from Harris saying that habeas is unique and it defies classification, and then it was reaffirmed in the decision in Stafford where the Court said that it had rejected a broad reading of the term, statutory term, civil action that would have encompassed habeas. So combining those three cases and looking at the context here, as the term is used in EJIA, ambiguity arises. And if you, if we accept the premise that context matters, as you've indicated, and as I think interpretive principles suggest, is it the context that we're talking about a habeas proceeding relative to immigration detention as opposed to criminal detention in Ewing, does it, that context matter? Your Honor, I think context certainly matters. I don't believe that that distinction makes a dispositive difference in this case. Because in my view, the outcome here should be the same as the outcome in Ewing. Even Ewing acknowledges in a footnote that it may not be the same, right? Well, let's talk about that footnote, Your Honor. The footnote in Ewing where the Court distinguishes Hill. And I think it's really important for this discussion that we get into exactly why the Ewing Court was distinguishing Hill. The Ewing Court analysis is essentially a statutory purpose analysis. Ultimately, after concluding that the term civil action was ambiguous as to habeas, the Court then turned to statutory purpose. And the purposes that the Ewing Court found under the legislative history to, right? That's what you acknowledged in your own brief. Absolutely. So I will say, Your Honor, when we're talking about statutory purpose in sovereign immunity, the Court has to be careful. Because oftentimes, statutory purpose is drawn from legislative history. That's what the Ewing Court did. But I will say, as we point out in our reply brief, when Congress passed the EJA, it included a statement of purpose in the public law. We cite to that in our reply brief. And that statement of purpose that Congress actually said, here is the purpose of the statute, is entirely consistent with what Ewing found from the legislative history. And that purpose was to remove economic deterrence to challenging unreasonable government action. Now, in this body of case law, there are a lot of more broad statements of purpose, not in Ewing, but in, for example, Boudin, saying things like, well, the purpose of EJA is to make better policy, to deter the government from acting unreasonably. Those purposes are not stated in the statute. But the economic anti-deterrent purpose is. And that is what Ewing was all about in its statutory purpose analysis. It said, all right, so individuals who are in criminal confinement and they're filing habeas, essentially, are they economically deterred from filing? And the Court said no, because they're eligible for appointed counsel under the Criminal Justice Act. And they have a, what the Court called, a custodial incentive. And what I think that means, and it's really the crux of the difference between Hill and this case and Ewing, is that what Congress was trying to fix with the EJA was the situation where an individual may have a claim, but it is more expensive to pursue that claim than the claim is worth,  essentially. That is the kind of economic deterrent that Congress was trying to undo with the EJA. And that's all. It's a narrow purpose. In Ewing, the Court recognized that the petitioner in Hill was in an entirely different position. He was in an entirely different position, because he was in a civil proceeding, right? That's not the distinction that Ewing draws, Your Honor. That's not the language that the Court uses. But the bottom line is, Footnote 5 acknowledges that these contexts are not the same. And that was where I started with this conversation, that we are in a different context, are we not, than Ewing? I agree, Your Honor, that the Footnote 5 says the context is different. But I really think, I think we may disagree about what that difference is. And I think for the Ewing Court, what was important about that difference was that the petitioner in Hill was a free person living in another country. They were not detained. He was essentially trying to challenge a public policy decision that had been made to deny homosexual individuals visas. And that those circumstances, so he was not detained, so he was not eligible for counsel, and he had no custodial incentive. It was really a matter of dollars and cents. He could have gone to visit another country. And that really means that that anti-deterrent purpose of EJA was very much active in Hill, whereas it was not in Ewing. So I think that that is the distinction that Footnote 5 and Ewing is drawing, between situations where there is an economic deterrent to filing and situations where there is not. Now, in this case, Ms. Daly is detained. So she has the same custodial incentive as the petitioner in Ewing. We talk in our brief about eligibility under the Criminal Justice Act for appointment of counsel. The reason why she's in custody relevant, and that's what I think we're getting at here with context. If someone is in custody pursuant to a criminal proceedings, that means they have a sentence. That means it's been said by a court, you will serve this amount of time in custody, compared with someone as here, Ms. Daly in immigration, wherein she's in detention until her proceedings. Expire. And as the government conceded, she wasn't afforded any process, so she was unlawfully detained. Why isn't that an important factor when we consider the context? Well, Your Honor, I'll just take issue with the notion that the government conceded that she was unlawfully detained. Obviously, the district court held against us on the merits. It held against us on substantial justification. We haven't appealed those points. We certainly don't concede them. But I would say, Your Honor, that the distinctions that you've just drawn are certainly relevant to the merits of her habeas claim, but I don't believe they're relevant to whether habeas claims, habeas petitions challenging immigration detention are civil actions for the purposes of the EJIA. I think those are two different questions. And I think that habeas claim can address any variety of- You're saying the reason why someone's in detention has no relevance at all? I think it does not have relevance to whether it's a civil action, no, Your Honor. OK. Can I ask you about the statutory language, though, as we've examined purpose? What do we do with the language in the statute that comes right after the word action? In the parenthetical, it says, other than cases surrounding in tort. It seems, at least arguably, that Congress is specifically saying, traditional civil actions, we're going to carve these out. But they don't include habeas. And as the briefs point out, for well over 100 years, the Supreme Court have been calling habeas actions civil. So if Congress, aware of all that precedent, doesn't include that habeas action in the statute, isn't that significant? Well, I think, Your Honor, that language, the tort exclusion, only comes into play once the court or once a decision maker has determined that the underlying case is a civil action. And the issue here, the issue that we raise, is that habeas isn't a civil action to begin with. So it doesn't matter. So the question here, essentially, is not, is the civil action at issue in this case one of the ones that EJ is supposed to apply to? If that's the question, and that was very similar to the question in Nelson, but if that's the question, then sure, any and other than cases sounding in tort, they're going to do a lot of work to answer that question. But here we're talking about the antecedent question, which is, is habeas a civil action at all? And I think, Your Honor, I mean, as we show, we've got three very strong Supreme Court cases in the decade preceding the enactment of EJ saying that habeas is not always civil, and specifically not a civil action for some statutory purposes. I mean, we've just got some bedrock facts. We don't talk about habeas, an action for habeas, like it's trespass or breach of contract. We talk about a writ, an application for a writ of habeas corpus. That's what Section 2241 says. In the language of Section 2241, it doesn't use the phrase civil action at all. When you look at Federal Rule of Civil Procedure 81, we're talking about civil actions and proceedings. And these are the proceedings where the rules apply, and here's how. So I think the things listed in Rule 81 are debatably not civil actions. And again, I think because sovereign immunity is at issue here, all we need is a plausible reading of the statute whereby habeas, this petition is not encompassed. Promoting sovereign immunity, the interpretive canon, that principle of sovereign immunity, that comes into play after you've exploited traditional tools of statutory interpretation, including looking at the plain language. So for the moment, why should I care about sovereign immunity? That is not the relevant inquiry to begin with, is it not? Well, I think, I mean, Your Honor is correct that the court has pointed out that the ambiguity that we're looking for, we're looking to see whether there's ambiguity, and we do apply the traditional tools of statutory interpretation, excepting legislative history, which I think has been firmly ruled out. But ultimately, the question before the court is, is there a plausible reading of this language that excludes these types of petitions from the scope of the term civil action? That question goes to the question of whether we have not come up with a, whether the language itself does not give a reading that is clear. I mean, the whole question of whether one would say, OK, there's an ambiguity, and therefore, we construe that narrowly to protect sovereign immunity, we're not there yet. I mean, to begin with, we've got to decide whether there's an ambiguity. I mean, that may be what you perceive to be true, but that's not the beginning of the analysis, is it? Well, I agree with Your Honor completely, yes. There must be an ambiguity in the language before the sovereign immunity canon, before the clear statement rule comes into play. But I think that's exactly what, again, I'll point the court to the PLRA cases. This is exactly how the court proceeded there. Same statutory term, but in a different statute, being applied to habeas, which is, I think, what the Simmons case calls a strange and slippery creature. It is a unique category unto itself. It predates civil actions. It predates the federal rules. It predates pretty much all of American law, and has always been there as a separate and distinct type of action. I see I have one second left, Your Honor. I would like to reserve that for rebuttal, if I could. Thank you. Thank you. Good morning. Jack Hoover for the appellee, and may it please the court. My client prevailed below in a civil habeas proceeding, challenging civil detention arising from civil immigration proceedings. There are two main issues here that, once clarified, demonstrate why civil litigants like my client are entitled to their fees under EJIA. First, habeas has so long and so broadly been considered a civil action that it is implausible that Congress meant to implicitly exclude civil immigration habeas from EJIA. And when Congress uses the phrase, any civil action in other statutes, that phrase has uniformly been interpreted to include habeas actions. And so the text is clear. And second, the government seeks an exceedingly narrow view of the sovereign immunity canon, and one the Supreme Court has explicitly rejected. Courts use all of their traditional tools of statutory interpretation to determine a waiver's scope. The court below got these issues right. Well, why do they separate out criminal habeas? Why isn't that a civil action also? We believe that criminal habeas is a civil action, but it's never been so held. Courts have held that criminal habeas is not a civil action for the purpose of EJIA, and I just want to state, for the purpose of preservation, that we think that that is wrong. Well, it may be wrong, but I mean, there are two very valid principles at stake here. And if immigration habeas is civil, then it should all be civil, right? That's, we agree with that. We believe that habeas is habeas, and so it should be treated as a civil action uniformly. And if you believe that, then why isn't Ewing controlling? Why isn't that the end of the game? So for the purposes of preservation, I just want to say that we think Ewing is incorrect, but this court does not need to overrule Ewing to rule for us today. The court there explicitly differentiated criminal actions from civil actions. Then you have lost me. I thought you just said habeas is habeas, criminal habeas is civil. Well, Ewing didn't do that, did it? Right, Your Honor. So we're living in the world where Ewing is controlling here and the court there does believe that there's a difference between criminal habeas and civil habeas. So is that the world you're living in? Because was your colloquy with Judge Kelly some other world? Are you taking the position that all habeas is habeas and therefore criminal habeas is civil too? What world are we in? I believe that's a world that we would like that we're just preserving for future. Well, I don't want to hear aspirational now. Tell me what you're arguing now. Yes, Your Honor. And so we believe that the courts holding in Ewing is distinguishable because the court there was saying that criminal habeas is different. It's covered by the CJA. And footnote five makes that quite clear that the court believed that civil habeas was a different sort of action. And so the court there was inviting a future panel to take a different position on a purely civil immigration habeas case such as this one. Isn't the same custodial incentive present here as was present in Ewing? No, Your Honor. This custodial incentive is slightly different. My client could have been released at any time if she simply gave up her visa applications. And the government stated below that it was ready to remove her to Guatemala within 14 days. That's at page 116 in the record. And so she could have given up her challenge and given up her rights in the face of the agency action there, which places her exactly in the sort of litigant that Congress was thinking about when it passed EJA. Another key distinction between Ewing and this case is that the criminal defendant there was incarcerated pursuant to a criminal conviction, which already involved an Article III court. My client here was challenging agency action. There was no court involvement until her petition for habeas was filed. And so she's in a markedly different position from the petitioner in Ewing. I just want to focus for a moment on the text, any civil action. The government tries to lop off the word any, but we think that the word any is meaningful here. And so we've listed in our briefing a number of places in the federal code where the word any civil action has been interpreted to include habeas. And in fact, we have not found a single place in the code other than here where courts have interpreted any civil action to disclude habeas. And there's one key example that I wanted to highlight, and that's 28 U.S.C. 1914, which sets the fees for filing civil actions. And so it says for any civil action, the filing fee is $350, except for habeas actions where the filing fee is $5. And so Congress is doing there what it could have done in EJA. Congress knows how to accept habeas from civil actions when it wants to, and it didn't do that here. And in fact, the government has no answer to one of the strongest pieces of evidence in the statute, which is that Congress expressly excluded tort actions. And as the opposing counsel said, that's getting the cart before the horse. The question is, what is a civil action? That is excluding certain civil actions. That presumes that habeas is a civil action in your argument, and that's what we're here to talk about. Is it not? Right, Your Honor. And so another- And what do you do with the PLRA cases, including McIntosh that opposing counsel mentioned? What's your position on those? Those cases, we believe, reflect the Supreme Court's practice, which is uncontroversial, to harmonize the rules applying generally to civil actions with the habeas rules. And so that's what the court did in Browder, for example, which was a motion to reconsider. And the question was, do the general civil rules that apply to a motion to consider apply in habeas? And the Supreme Court said, habeas is a civil action, and so we apply the federal rules by default. And there's no conflict here between that federal rule and traditional habeas practice. And that's what the courts are doing in McIntosh and Schleinger, is they are trying to see if there's a conflict between the civil rules and the general habeas practice. Well, what do you say about the financially inability as covered by the, under section 2241, that she could have gotten appointed counsel? The government makes this, takes this position in its reply for the very first time. We think that that issue is unclear at best. So the 11th Circuit has held in a case, it's Perez-Perez v. Hanbury, that 2241 petitions for detained non-citizens do not fall within the text of the CJA. In addition, the government cites a number of cases. Is the Perez case somewhere in your brief or no? It is not, Your Honor. Would you please submit a 28-J letter on that? Yes, Your Honor. Just so we have it as part of the record. Yes, and again, that was raised in the government's reply brief for the first time. It was not even discussed. No, I'm not casting false. I'm just saying if you'll do that, please. Yes, Your Honor, and I also wanted to point out that the cases the government cites for that proposition, there's the Saldina case and Chamberlain case, the government actually opposed a CJA appointment in those cases and appears to take a different position here. Counsel, can I ask you- Does that make it ambiguous? Sorry, Your Honor, I didn't hear. Does that make it ambiguous? I don't believe that that makes it ambiguous here. It doesn't make the text ambiguous for the waiver of sovereign immunity. It's sort of quite far down the line of analysis. And so the government is trying to use it to create ambiguity here when there's just too much uncertainty in that point to stand on. Counsel, I wanted to ask about the case law that talks about habeas being a sort of hybrid. The government calls your theory the two buckets theory. Why does it have to be civil or criminal? And it seemed to be some of the reasoning that was relied upon by the Fourth and the Fifth Circuits, which you know have gone against your position. But what do we do with that body of case law that seems to recognize that habeas, the Great Writ, is just a different animal than what is commonly construed as civil filings, including the procedures and all other ways in which the cases proceed in the normal course in a court. So what do we do with that body of case law? The case law does say for some purposes that habeas is a hybrid action, but they're talking about procedurally. They're saying procedurally sometimes different rules apply. And that's what those cases are really about is whether, for example, Rule 33 interrogatories apply to habeas. And of course they don't because the defendant is the custodian and they don't necessarily know why the petitioner is incarcerated. And so one of the amicus briefs actually put it nicely and said what the government's arguing is that a goalie is not a soccer player because they can use their hands. And so the hybrid nature there is really the application of the civil rules to habeas proceedings. And it's an uncontroversial statement to say that sometimes they just don't apply. But that doesn't mean that habeas is something other than a civil action. And the Supreme Court has never said that, that it's not a civil action. So we should look more to the nature of the right that's being invoked and sort of ignore the procedures? That's our position is that because habeas is not a criminal action, that it is a civil action. There's further evidence of that. For example, when Congress enacted the Rules Enabling Act in 1934, it essentially instructed the judiciary to take all of these writs and bills in equity, all of them, and combine them into a civil action. And the Supreme Court did that a couple years later with Rule Two. And so it would be rather unusual for Congress to take a different position in EJA than it did in the Rules Enabling Act and believe that this one writ was excluded from the phrase civil action, but not state that explicitly. I just want to touch briefly on the government's sovereign immunity argument. Because the government takes a strikingly narrow position on sovereign immunity. The government essentially asked the court to strip away the word any, strip away the context in the statute, the purpose of the statute. And that's just not the analysis that the Supreme Court has undertaken in these sorts of cases. And the government is free to argue that to the Supreme Court if it wishes, but the court's recent opinions just do not follow that analysis. The ambiguity that we'd be looking for here is after the court applies all of its tools of statutory interpretation. And if there's ambiguity at the end of that analysis, that's where the canon would apply. And so we see that play out, for example, in Cooper where, in Justice Alito's opinion, where the court does use all of its tools and tries to get to the bottom of the issue. Lots of analysis of the common law, even a little bit of legislative history that the court says is helpful but not binding. And it gets to the end of that analysis and says we've done all of this work and we cannot choose one meaning or the other. And that's where the canon comes into play. Counsel, can I ask you though on ambiguity, haven't we already held in Sloan that civil action as used in EJIA is ambiguous? I believe that Sloan's reasoning was taken almost entirely from Ewing. Yes, I agree with that. And so I would address the way Ewing discusses ambiguity. And it does say in the analysis that there is ambiguity there. But then Ewing does work to try and resolve that ambiguity. But don't we have to do that same work because Ewing and Sloan are published opinions of this court? I think so, but the ambiguity can be resolved first by analysis of the plain text in comparison to other cases where any civil action has been interpreted. It can be interpreted based on the structure of the statute, the purposes of EJIA, which many courts have discussed. And when you get to the end of that analysis, there's essentially an avalanche of tools that fall in our favor. And we're still stuck with trying to distinguish Ewing, right? I think Ewing- This world, not the aspirational world. Right, Your Honor. We have to do that, right? Ewing distinguishes itself. It limits itself to criminal actions. And so the position presumably would be that since Sloan flows from Ewing, Sloan's doing the same thing, right? Right, Sloan- I read Sloan to just be taking the analysis from Ewing and making the same holding. But Ewing explicitly says that it's limited to criminal actions. And I view footnote five as inviting a future panel to potentially take a different view of civil actions in other contexts, and especially in the immigration context. But if there are no further questions, thank you. We ask this court to affirm. Thank you. Case was submitted. You had four seconds. You can try to take- Oh, you were over four? Yes. Okay, sorry. Then case is submitted. And as I noted before, we will have one more case and then we will be in a short recess. Thank you, counsel, for your very fine argument. That's where the crowd went.